No. 8038.

STATE OF LOUISIANA EX REL. JACOB MEYERS VS. BOARD OF LIQUIDATION.

A Motion in this Court, before the case is on trial, to strike out of the Transcript of Appeal documents alleged to have never been offered in evidence, is without precedent and will not be entertained.

Having obtained judgment from the District Court against the Board of Liquidation, declaring certain State bonds and warrants legal, and ordering the funding of them, under Act No. 3 of 1874, and the judgment of the District Court not being appealed from, the Relator applied for a Mandamus to compel the Board of Liquidation to fund said bonds and warrants and issue in their stead the Consolidated Bonds provided for by law.

Held that, under Act No. 11 of 1875, the Board of Liquidation is to fund bonds or warrants, the legality of which is questioned, only after said bonds or warrants have been declared legal and valid by the Supreme Court; and, therefore, the judgment of the District Court, though final, is not, under the special provision of said law, binding upon the Board of Liquidation.

The Relator himself, though the judgment of the District Court was in his favor, had the right to bring said judgment up for review by this Court, to meet the express and special requirement of the Statute.

APPEAL from the Fifth District Court, parish of Orleans. *Rogers,*
J.

---

*Kennard, Howe & Prentiss* for the Relator and Appellant.

First—Relator, having obtained on the 28th February, 1879, a final judgment against the Board of Liquidation, under the 3d section of the Act No. 3, of 1874, declaring his warrants "to be legal and valid obligations of the State of Louisiana and fundable under Act No. 3, of 1874," and directing said Board "to exchange the said warrants under and in accordance with the provisions of said Act No. 3, of 1874, for consolidated bonds under the provisions of said act," and more than one year having elapsed from the rendition of said judgment, and no appeal having ever been taken; and the said Board having on the 7th July, 1880, adopted a resolution to fund said warrants; and having received the said warrants into its possession and destroyed them, and having given the usual receipt for them, which is made part of the petition herein, it was and is its plain duty to deliver the corresponding 60 per centum of bonds to relator.

Second—Under the Articles of the Code of Practice 829-844, the modern theory of mandamus in the other States of the Union is specially established in Louisiana, to the extent set out in these articles.

State ex rel. Meyers vs. Board of Liquidation.

*a.* The writ is directed to public officers, to compel them to fulfill any of the duties attached to their office, or which may be legally required of them. C. P. 834.

*b.* The party who obtains the alternative writ is required to make full *prima facie* proof of his right by affidavit. He makes "oath of the facts thus alleged." C. P. 840. The judicial mind acts at once on this proof. The writ is issued, directing the defendant to do the act, or show cause to the contrary. C. P. 841. If he show no cause the writ is made 'peremptory. State *ex rel.* Marin vs. Judge, Opinion Book No. 45, p. 575. If the answer is considered insufficient the writ is made peremptory. C. P. 843.

*c.* So far as the answer is concerned, anything in the nature of a general denial is of no avail. The relator being required to make oath to "truth of the facts thus alleged," has the correlative right to have this oath respected, unless it is shown to be untrue, or that, if true, it does not justify the writ. Watts vs. Police Jury, 11 An. 141. And this is the plain rule in the other States whence mandamus was derived. Levy vs. English, 4 Ark. 67; Bank vs. Canal Commissioners, 10 Wendell, N. Y. 25.

Third—In the case at bar the answer or return of the Board contains merely a very vague general denial, and then a new and substantive defense, which seeks to go behind the matters, which, if they have any existence, were concluded by that judgment. All the allegations of fact, then, in relator's petition, may be taken as true, and they are fully corroborated, if need be, by the documents, made part of the petition, and those offered and filed with the exception of *res judicata* at the trial. Semple vs. Barrow, 2 An. 141; Canal Bank vs. McGloin, 10 An. 241.

Fourth—On the 16th of July, 1880, at the trial, the relator, with excess of caution, filed the exception of *res judicata* to that portion of the respondent's answer which sought to go behind a solemn final judgment between the same parties, and set up matters which, even if proved, (and they are not proved), are conclusively presumed to have been concluded by the relator's judgment of February 28, 1879. The exception was plainly a good one, and should have been maintained. Rev. C. C. 2286; Plicque vs. Perret, 19 La. 318; Parker vs. Scrogin, 11 An. 629, 632; Prescott vs. Lewis, 12 An. 197; Baker vs. Frellsen, 32 An. p. 830; Granger vs. Singleton, 32 An. 898.

Fifth—Even if the respondent could be heard to prove the allegations to which the relator's objection of *res judicata* applies, no such proof was offered.

Sixth—The judge *a quo* in his written reasons, admits that the respondent should not be permitted to go behind the final judgment of relator. Yet he dismisses the relator's suit. This was evident error. The judgment in the case at bar should be reversed, and judgment rendered for relator as prayed for.

*J. C. Egan*, Attorney General, and *H. N. Ogden* for Defendant and Appellant.

"The true object of the writ of mandamus is to enforce a *clear legal right* by compelling an officer to perform a legal duty, which he has no discretion to decline." See Dictum of Mr. Justice Howe, in concurring in the decision in State ex rel. Smith & Co. vs. Board of Liquidation of the Floating debt of the State, 23d An. p. 390.

"The party who applies for a mandamus must show that he has a clear legal right to the relief sought, and that he has no other adequate remedy." 26th Ark. p.482.

The relator in a mandamus proceeding must make out his case. See recent decision in Hartwell vs. Johnson.

"The party who desires to have a judgement, of which he complains, reversed, should have the testimony reduced to writing or a statement of facts made out; *otherwise the presumption is that appellees fully made out their case below.*" Johnson vs. Spearing, 15 La. 232.

Facts which appear in the record only from a statement in the opinion of the inferior judge that they were proved, *are not in evidence.* The evidence itself must be produced. See authorities on p. 76 of Hennen, 1st vol.

A party must not only produce evidence, but see that it is received and noted. James Stafford vs. W. P. Harper, Sheriff, and James M. Weymouth, recently decided.

State ex rel. Meyers vs. Board of Liquidation.

*Evidence, although in the record, if not offered below will not be noticed,* Sargent vs. Slatter, 6th An. p. 72.

If documents are to be considered in evidence, merely because they have been annexed as part of a petition, then a party desiring to use as proof documents clearly inadmissible, could secure his end by merely filing them before the trial as part of his petition, the right to object to their introduction would thus be destroyed.

Act No. 3, of 1874, section 3d, provides that "if any member of said Board of Liquidation shall knowingly audit and fund any illegal claim against the State, he shall be deemed guilty of a misdemeanor, and shall, on conviction, be fined not less than five thousand dollars and be imprisoned not less than two years, at the discretion of the court"—and the supplemental act No. 11, of extra session of 1875, declares that "the Board of Liquidation, constituted by the second section of act No. 3, approved January 24, 1874, entitled an act to provide for funding obligations of the State, by exchange of bonds, etc., is hereby prohibited from issuing any bonds in exchange for outstanding bonds of the State, or warrants drawn previous to the passage of said act by the respective Auditors of Public Accounts of the State on the treasury thereof, forming items of State indebtedness, the legality or validity of which may have been or may be hereafter questioned, until such bonds or warrants shall first by final decree of the Supreme Court of the State of Louisiana, have been declared legal and valid obligations against the State, and that the same were issued in strict conformity to law, and not in violation of the constitution of this State or of the United States, and for a valid consideration."

In the face of such a provision the judgment of an inferior court could never warrant or protect the Board of Liquidation in funding outstanding bonds or warrants, and this court could not order their exchange for consolidated bonds until it had seen and passed upon the warrants themselves.

There is no evidence in this case to contradict the full and explicit return, and no pretense that the warrants sought to be funded have ever been seen by the Supreme Court.

---

### On Motion to Strike Out.

The opinion of the Court was delivered by

Bermudez, C. J. The motion made to strike from the transcript documents which are alleged to have never been offered in evidence, is without precedent, and cannot be entertained at the present stage. When the case will be on trial on its merits, whatever the same may be, it will be time enough for the mover to call the attention of the Court to their improper insertion, and to object to their being given any effect. We would otherwise be called upon unnecessarily to examine *twice* cases which should receive our consideration only *once,* and we would, therefore, be uselessly and onerously taxed.

It is, therefore, ordered that the motion be declined without prejudice to the right of parties to act as suggested on the trial of the case on its merits.

---

### On the Merits.

Todd, J. The relator alleges substantially that by virtue of a final judgment rendered in the Fifth District Court of the parish of Orleans, in a case entitled "Jacob Meyers vs. Board of Liquidation," the said

board provided to exchange the warrants mentioned in the judgment for consolidated bonds of the State under Act 3 of 1874.

That the board, by resolution, did fund the said warrants and receive them from relator, and then and there cancelled them, and gave to the relator a certificate to that effect annexed to and made part of the petition.

It was further alleged that the relator was entitled to receive the consolidated bonds under said acts, and that it was the duty of the board to deliver them, but that the board refused to deliver them, and declared that it would not do so. Whereupon a mandamus was prayed for to compel the board to perform this alleged duty.

The return or answer made by the board is substantially to the following effect:

It denied that the bonds in question were legal and valid obligations of the State, but averred, on the contrary, that they were illegal, unconstitutional and void, and had been so declared by the highest judicial tribunal of the State. It was further denied that the relator had any final judgment requiring the Board of Liquidators to fund said warrants, and averred that such final judgment could only be rendered by the Supreme Court of the State; and that such judgment of the Supreme Court establishing the validity of such warrants was an essential prerequisite to their funding.

The court *a qua* refused the mandamus, and the relator has appealed.

There has been a question raised as to the sufficiency of the evidence in the record to authorize a review of the case by this Court; and there is an issue between the parties, extensively discussed, as to what is or is not in evidence. From the conclusion we have reached touching the merits of the controversy, we deem it unnecessary to decide this question.

The Board of Liquidation was established by Act No. 3 of 1874, commonly known as the "Funding Act." It was through this board that the bonded debt of the State was to be consolidated, and the holders of the bonds or warrants were required to present them to this board for examination and exchange.

Section third of this act provided, that "if any member of said Board of Liquidation shall knowingly audit and fund any illegal obligation against the State he shall be guilty of a misdemeanor and shall, on conviction, be fined not less than five thousand dollars, and be imprisoned not less than two years, at the discretion of the court."

Act 11 of the extra session of 1875, supplemental to Act 3 of 1874, in its first section provides:

" That the Board of Liquidation constituted by the second section

128 . SUPREME COURT OF LOUISIANA,

State ex rel. Meyers vs. Board of Liquidation.

of Act No. 3, approved January 4, 1874, entitled an act for funding obligations of the State by exchange for bonds, etc., *is hereby prohibited* from issuing any bonds in exchange for any outstanding bonds of the State, or warrants drawn previous to the passage of said act by the respective Auditors of Public Accounts of the State on the treasury thereof, forming items of State indebtedness, the legality or validity of which may have been, or may be hereafter questioned, until said bonds or warrants shall first, *by final decree of the Supreme Court of Louisiana,* have been delared legal and valid obligations against the State of Louisiana, and that the same were issued in strict conformity to law, and not in violation of the Constitution of this State or of the United States, and for a valid consideration."

In the case of the State ex rel. Forstall vs. Board of Liquidation, where the construction of this last act was before the Court and the required judgment on the bonds not rendered, the Court said that the board " had the right to refuse to fund any and all bonds and warrants. Its duty is to refuse to fund all that come to them tainted, without regard to the fact whether they are in the questioned list or not." The questioned list mentioned being the list of bonds and warrants that by the second section of the Act of 1875 are specially designated and declared " questioned and doubtful as to their legality and validity."

The object and intent of the act seems manifest. It was to afford the surest protection to the State against outstanding invalid or fraudulent obligations, many of them known to have been issued in times of misrule and maladministration of our State officers, by requiring that their validity should be recognized and declared by the highest judicial tribunal of the State, and at the same time protect the holders of bonds and warrants of the State against any unjust exclusion of the claims by the board.

But what is meant by the words " that may have or may be hereafter questioned " employed in the Act of 1875 ? By the terms of the Act of 1874, establishing the Board of Liquidation, it was required to exchange the bonds to be prepared under the provisions of the act " only for valid outstanding bonds of the State and *valid* warrants drawn previous to the passage of the act;" and the members of the board were declared guilty of a crime, and subjected to heavy fine and imprisonment, if they funded any other kind of bonds or warrants except valid ones.

This looks like investing the board with a very large discretion touching the character of the bonds that might be presented to them for funding, and conferring on them, in no stinted measure, the right to "question" such bonds which, in its judgment, did not meet the requirements of the act.

The Board of Liquidation in this case *did question* the validity of the relator's warrants, and took a very summary and effective way to make its questioning felt, and it is its acts, in this respect, that are complained of by the relator in this proceeding. And the answer or return to the mandamus, in which the validity of these warrants is so vigorously assailed, was made by the then Attorney General, the highest law officer of the State. It seems, therefore, that these warrants have been " questioned," and seriously questioned, by very high authority, and, we think, by competent authority, and in a manner to meet and satisfy the requirements of the law. Nor does the act prescribe the time within which such bonds or warrants may be questioned. Its language, in this respect, is of the broadest description, and allows an indefinite term for contesting their validity. The counsel for the relator, however, contends that the judgment of the District Court, upon which his proceeding is based, is conclusive as to his right to have the warrants funded and exchanged, inasmuch as the judgment was not appealed from, and the delays for an appeal had expired, and urges that the judgment is, therefore, final, and has the force of *res adjudicata.* We think otherwise. It is only to a judgment rendered in a proper suit by a court clothed with complete jurisdiction over the subject matter thereof, between the proper parties, and after regular proceedings, that the force of the " thing adjudged " can be ascribed where the lapse of time required therefor has made it final.

Do these requisites concur with respect to this judgment? By the express terms of the act, bonds and warrants " questioned " may be funded, but it is only *after a final decree of the Supreme Court* has pronounced them legal and valid obligations, " issued in strict conformity to law, and for a valid consideration." This is the prescribed authority to the board, and the only authority that is sufficient to empower it to fund the bonds or warrants in such contingency. By language the most explicit, and which cannot be misunderstood, such decree is made a prerequisite, a *sine qua non* to any action of the board looking to the funding or exchange of such obligations.

The effect of a decree of any other court, a District Court for instance, ordering the funding of such warrants, is not to be judged according to rules applicable to ordinary cases. The State cannot, as a rule, be sued in her own tribunals. No one has a legal right to prosecute or enforce a claim against the State except by her permission, and in the manner she may prescribe. The establishment of the Board of Liquidation for the purpose of determining the liability of the State, and adjusting demands against her, and the investing the board with the necessary authority to determine and fix her obligations, was an act of grace on the part of the State towards her creditors. So, too, was

the privilege given them to prosecute their demands against the State by proceedings in her highest judicial tribunal. The State in her sovereign capacity had the power to prescribe the manner of the proceeding, and to designate the Court whose decree should be respected, and whose authority should be acknowledged as paramount and controlling over the subject, with respect to which her power was exercised and permission granted. And she has done so. And the State having thus determined and declared her will through her legislative department, the privilege conceded could be exercised in no other way than that prescribed, and the end in view reached through no other tribunal than that designated and appointed.

It is not for us to say how the proceedings should be conducted and how the required decrees be obtained in all cases. The relator's counsel may think that it would be a very irregular and novel proceeding for him to bring a case before the Supreme Court from a judgment in his favor in the court of the first instance. We reply, "*ita scripta est lex.*" We fail, however, to perceive any insurmountable obstacle in the way of obtaining a decree of this Court, even where a favorable judgment has been rendered by an inferior court, and why, in such case the proceeeding could not be transmitted to this Court to meet the express and special requirement of the statute in a manner conformable to the letter and spirit of the act. The question relating to the mode of procedure is, however, not now before us. It is sufficient to say that the right to bring the judgment up for review by this Court, even by the party in whose favor rendered, existed; and in a proper case would have been enforced.

The warrants of the relator having been questioned as to their validity, and the same not having been declared legal and valid obligations of the State by a final decree of this Court, we cannot grant the relief sought and compel the Board of Liquidation to exchange them for consolidated bonds, as provided by the act invoked; but we reserve all the rights of the relators otherwise.

It is, therefore, ordered, adjudged and decreed that the judgment of the lower court refusing the mandamus be affirmed with costs.

